REPUBLIC I. WORKS v. HILL BURGWIN ET AL.

| 139 | 439 |
|---|---|
| f200 | 450 |
| 139 | 439 |
| d218 | 572 |

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 6, 1890—Decided March 9, 1891.

(*a*) A decedent, at the time of his death, owned and was engaged in mining upon certain coal land, between which and the Monongahela river lay another tract of land owned by him. Across the latter ran a narrowguage railroad, built by him to connect said coal with the river, and used exclusively to transport the product of his mine.

(*b*) In a proceeding for the partition of his estate, by agreement of all parties, to certain of his heirs were allotted the coal, and also the railroad, with the right to maintain and renew the same forever, and with the additional right to "the parties named in the inquisition as owners of the coal and railroad," to build branch railroads on ten specified streets, laid out on the partition plot.

(*c*) For nearly fifty years no attempt was made to construct any branch railroad, and the existing road was used for forty-five years exclusively as a coal railroad. In 1887, some years after the coal had been practically all mined out, the owners of the railroad attempted to build a branch road of standard guage on one of said streets, for general railroad purposes:

1. It being clear, from the above facts, that the purpose of the provisions in the decree, relating to the building of branch railroads, was to afford to the owners of the coal property facilities for removing and marketing the coal upon it, said provisions did not justify the attempt to build a branch railroad, not necessary, and not to be used as an appurtenance to the coal property.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 223 October Term 1890, Sup. Ct.; court below, No. 393 January Term 1889, C. P. No. 2, in Equity.

On December 7, 1888, the Republic Iron Works, Limited, filed a bill in equity against Hill Burgwin and John O. Phillips, trustees, averring that the plaintiffs were the owners of certain lands in the Twenty-fifth ward, Pittsburgh, and that the defendants wrongfully threatened to enter upon said property for the purpose of constructing thereon a railroad; praying for an injunction to restrain them from so entering, and also for a decree that they had no right so to do, either as trustees or as individuals, and for general relief. The defendants answered averring that they possessed such right by reason of certain facts which are stated infra.

On May 13, 1889, the defendants filed a cross bill against the plaintiffs, and also against the Pittsburgh & Lake Erie Railroad Company, alleging affirmatively that said trustees possessed the right to enter upon the lands for the purpose of building a railroad, and that said railroad company had colluded with the Republic Iron Works, Limited, to prevent the exercise of such right; praying for an injunction to prevent interference therewith.

Issue being joined on both bills, they were referred by the court to *Mr. John S. Ferguson*, as examiner and master, who found in substance the following facts:

Oliver Ormsby died intestate on or about July 27, 1832, leaving to survive him eight children, seised, among other lands, of two tracts or pieces of land, one known as the Ormsby Villa tract, fronting on the Monongahela river, containing about two hundred and twelve acres, and the other being a tract of coal and land containing coal, adjoining the first mentioned tract on the south. The second piece, before said partition proceedings were begun (how long does not appear), had been worked as coal land, and had connected with it a coal railroad extending from the pit mouth, through the piece of land first referred to, to the Monongahela river.

Proceedings in partition were instituted at No. 32 March Term 1841, in the Orphans' Court of Allegheny county. In these proceedings, the jury of inquest made a plan of the tract fronting on the Monongahela river, and laid out therein certain

streets and alleys, as they expressed it, "for the use of the representatives of the said Oliver Ormsby, their heirs and assigns." Among these streets were Carson, Sidney, Wharton, Clifton, Railroad, Brown, Oliver, Caroline, Phillips, Page and John streets, to which reference will be made hereinafter.

The ground was allotted to the different heirs; and, among other portions thereof, that now claimed by the Republic Iron Works, Limited, was allotted to Oliveretta Wharton, one of the said heirs. The coal was allotted to seven of the decedent's children, and their heirs, to hold in common, together with all the appurtenances of the coal pits used with the railroad. There was also allotted to them in common the said railroad, twenty feet wide, in the middle of a street laid out eighty feet wide, called Ormsby street, otherwise known as Railroad street and now Twenty-first street, extending from the division line between the two tracts down Ormsby street to the Monongahela river, together with the appurtenances of said railroad, and the right to maintain and renew said railroad forever. The allotment also gave to these parties, as tenants in common a piece of land on the Monongahela river, at the foot of the railroad, bounded by the westerly line of Ormsby street, the northerly line of Clifton street, the Monongahela river and other lands claimed by Oliver Ormsby.

On the coming in of the finding of the jury of inquest, to wit, on April 18, 1842, an agreement was entered into, between all the parties to the partition, containing the following provision:

"Now, know all men by these presents, that we the parties above named, do hereby assent to and approve of the partition made, with this alteration; that the parties named in the said inquisition as owners of the coal and railroad, with the appurtenances, and their heirs and assigns, shall have the right and privilege to lay down and maintain at their own expense branch railroads not exceeding twelve feet in width from the railroad as described in the said inquisition, along Carson street, Sidney street, Wharton street, Clifton street and also along those portions of Brown, Oliver, Caroline, Phillips, Page, and John streets, which extend northwardly from Carson street. And we do hereby agree that the said partition with the alterations aforesaid, shall be confirmed forthwith by the

Orphans' Court, and all errors and irregularities are hereby released."

With the report of the inquisition and this agreement before it, the court on April 21, 1842, made a decree, " that the inquisition in partition shall be confirmed forthwith by the court with this alteration ; that the parties named in the said inquisition as owners of the coal and railroad, with the appurtenances, and their heirs and assigns, shall have the right and privilege to lay down and maintain at their own expense branch railroads, not exceeding twelve feet in width, from the railroad as described in the said inquisition, along Carson street, Sidney street, Wharton street, Clifton street and also along those portions of Brown, Oliver, Caroline, Phillips, Page and John streets, which extend northwardly from Carson street."

By deed dated the — day of ——, 1881, the heirs and other representatives of Oliver Ormsby, deceased, who were then the owners in common of the twenty-feet strip of land in the middle of Railroad street and the railroad thereon, with the rights and privileges appurtenant thereto, granted and conveyed the said land, and all the rights and privileges thereto belonging to Hill Burgwin and John O. Phillips as trustees.

Said railroad was kept up and used under a lease to Joseph Keeling, until 1887, but for twelve years prior thereto, was not used for transporting coal from the Ormsby property, but was used for transporting coal from lands of other persons lying back of the Ormsby coal. Since the end of Keeling's lease, said railroad has not been used for any purpose, except a part thereof leased by said trustees to the Whitehall Railroad Co. ; and no branch road was ever constructed, or proposed to be constructed, by the said trustees, or by those under whom they claim, until about March 1, 1887, when the said trustees began to lay down and construct from said twenty-feet strip on Railroad street, towards the property of the Republic Iron Works, Limited, a broad-gauge railroad, not for carrying of coal from the coal lands aforesaid, but for general railroad purposes. The original railroad was a narrow-gauge road, never used for any other purpose than the carrying of coal from the Ormsby property, and, during most of Keeling's lease, from other properties. The Ormsby coal has been substantially all worked out.

Master's Report.

The Republic Iron Works, Limited, is now the owner of a piece of land on which it has erected two rolling mills, with the necessary appurtenances. This property forms a part of that which was allotted to Oliveretta Wharton, in the partition proceedings aforesaid; and said Republic Iron Works, Limited, claim and deduce their title from and through said Oliveretta Wharton.

At the time when said allotment was made to her, a certain street was located in the tract, of which the property of the Republic Iron Works, Limited, forms a part, called Wharton street, which ran through the ground now owned by the Iron Works, but that portion of Wharton street was closed up and vacated by proceedings at No. 40 June Term 1882, in the Court of Quarter Sessions of Allegheny county. Neither the trustees, nor those under whom they claim, had any notice of these proceedings, which were had under § 1, act of May 8, 1854, P. L. 645. Said portion of Wharton street was never accepted by the public, opened or used.

On or about December 4, 1888, the Republic Iron Works, Limited, laid down a railroad track on that portion of what had been Wharton street, between Twenty-fourth and Twenty-fifth streets, and the Pittsburgh & Lake Erie Railroad Co., at or about the same date connected its line of railroad with the track so laid down by the Republic Iron Works, Limited. In addition to the longitudinal track, between Twenty-fourth and Twenty-fifth streets, the Republic Iron Works, Limited, also laid down a track near Twenty-fourth street, crossing the entire width of what had been formerly Wharton street, but on that portion thereof which lay within its own property lines.

There was no sufficient evidence of any deception practiced by the Republic Iron Works, Limited, or any collusion between it and the Pittsburgh & Lake Erie Railroad Co., to prevent, or interfere with any rights of Burgwin and Phillips, the trustees of the Ormsby railroad property.

Upon these facts, the master reported in part as follows :

The whole question turns upon the rights of the allottees under the partition proceedings aforesaid ; whatever those rights were, they are held by Messrs. Burgwin and Phillips the trustees. The closing up and vacating of Wharton street

between Twenty-fourth and Twenty-fifth streets could in no manner impair, or divert those rights; because they had no notice of the proceedings. Whatever the right was, it stood directly in the line of this title, and was a matter that in no wise concerned the public, but was entirely personal between the holder of the right and the owners of the property.

Nor is there any question of abandonment, in the master's opinion, as directly affecting the rights of the parties. Indirectly the delay in the exercise of the right may have a bearing, and perhaps an important bearing in determining what the right actually was. What was it?

For sometime before the partition proceedings were begun the coal in the second tract was being worked. In order to market the coal, there had been constructed a coal railroad from the pit mouth to the river. When Ormsby's heirs came to make partition of his land, a number of them saw fit to take the coal as tenants in common. With it they took the coal railroad and the twenty-feet strip in the middle of Railroad street on which it was built. By agreement preceding the decree, they required those who did not take the coal with them, as well as themselves for their respective shares, to agree that in addition to the existing coal road they might also have branch roads from, on Carson street, Sidney, Clifton and Wharton streets, which ran at right angles to Railroad street, and on Brown, Oliver, Caroline, Phillips, Page and John streets, which ran parallel with Railroad street, to the river. On the face of this, the coal road from and below Carson street gridironed and formed six additional points or places of discharge on the river.

It is exceedingly likely, as alleged in the fourth paragraph of the cross-bill, that "the right to construct said branch railroad was provided for with a view to their being used in connection with and for the benefit of large manufacturing establishments, which would eventually be located and established on said land, especially on the lots fronting on the Monongahela river." But this allegation, as well as all the circumstances of the case, only goes, in the master's opinion, to make it certain that the coal was the principal matter, and that the railroad rights were only regarded as of importance in connection with the coal. Unless, then, the rights given by

Master's Report.

the report in partition, the agreement of the parties and the decree of the court, based thereon, are so expressed as to take in what is now claimed by the trustees, the rights claimed in the cross-bill must fail.

The coal was held in fee; and so was the railroad to the river. Together they constituted one works. To that works the branch railroads were appurtenant. As the decree expresses it, "the parties named in said inquisition as owners of the coal and railroad, with the appurtenances, and their heirs and assigns, shall have the right and privilege to lay down and maintain at their own expense branch railroads," etc. In the opinion of the master, whenever the coal was exhausted the right to construct branch railroads ceased. The coal is exhausted and there is no pretence that the branch railroad is required for, or is intended in any way to aid in the removal of the coal.

—After citing and quoting from National M. Co. v. McDonald, 28 L. J. Exch. 185; Goddard, Easements, 275, 276, and Wood v. Sanden, 44 L. J. Ch. 514, the master continued:

Applying these principles to the facts of this case, there is no difficulty in determining the rights of the parties.

It is conceded that if the trustees have the rights which they now allege, the mere lapse of time would not bar them from asserting these rights; but, when we consider that over forty-five years elapsed before there was any attempt to build any branch road; that that attempt to build a branch road was not made for more than twelve years after the coal was practically exhausted, and then not for the purpose of removing the remnant of the coal; that the main railroad has been largely leased to a public railroad corporation with which it is proposed to connect the branch road; that the original road on Twenty-first street was exclusively a coal road, directly connected with the coal in the hill at one end, and with the river as a point of the shipment at the other; that it was of the gauge used for such purposes; that the branch roads provided for did not extend beyond the limits of the tract partitioned, a distance of only about five ordinary city blocks; that to connect them with the main line, as they are proposed to be constructed, involves a considerable increase in width in the main road; that, as matters now stand, unless the right exists to make connections

with other railroads, the main road and its branches would practically begin with nothing and end with nothing, it would certainly seem to be a forced construction of the terms of the partition that the trustees in this case have a right to construct a railroad on Wharton street for general railroad purposes.

But it is contended on the part of the trustees that the coal with which the railroad is connected is not exhausted, and that, even if so substantially, the trustees are the owners of all the tunnels, ribs, entries, etc., and that therefore they would have a right to construct the branch road as an appurtenant to the coal and railroad. As it is admitted that the trustees do not propose to construct the branch for any such purpose, this is begging the question. The master has found, and it really is not denied, that the coal has all substantially been taken out. Mr. Keeling says that he took out most of the coal; that there was a little he did not want to take; and that little has been undisturbed for more than fifteen years. Mr. Patterson says that the coal is worked out. But, even if some small quantity of coal remains which may some day or another be mined, equity would not interfere to aid these trustees in building a railroad on the land of the complainants for a purpose wholly foreign to the removal of that coal, nor would it compel the complainants to remove its tracks and buildings on its own property to enable the trustees to build a branch, in the absence of evidence that there was some reasonable necessity for the occupation of Wharton street in the removal of this coal.

The master therefore recommends, that a decree as prayed for by the Republic Iron Works, Limited, be made by the court; that the cross-bill be dismissed, and that the costs of these proceedings be paid by Messrs. Burgwin and Phillips, trustees; and he herewith submits a decree in accordance with this recommendation.

—Exceptions to the report of the master having been argued before the court in banc, they were dismissed, and a decree entered as recommended by the master; whereupon Burgwin and Phillips, trustees, took this appeal, specifying inter alia, that the court erred:

6. In not dismissing the original bill at the plaintiffs' cost.

7. In not granting the prayer of the cross-bill.

*Mr. Hill Burgwin* (with him *Mr. G. C. Burgwin*), for the appellants.

*Mr. W. B. Rodgers* (with him *Mr. W. A. Dunshee*), for the appellees.

OPINION, MR. JUSTICE McCOLLUM:

The agreement which entered into and became part of the decree in partition, must be construed in the light of the then existing conditions. The land allotted to the appellants' predecessors in title was coal land with an open mine upon it, and a narrow-gauge railroad on which to convey the coal from the pit mouth to the river. The provisions in the decree which relate to this railroad, and the right to build branch railroads from it, are the source of this contention. The appellants claim that they may, under the branching powers contained in the decree, construct a standard-gauge railroad on Wharton street for general railroad purposes; while the appellees maintain that it was the intention of the parties to the partition to allow the allottees of the coal land to use the railroad then in existence upon it, and to build branches therefrom for the purpose of removing the coal from the tract. It is forty-eight years since the partition was made, and the coal was all mined and removed from the tract twenty years ago. No effort was made to construct a branch railroad until 1887, when the appellants entered upon Wharton street and attempted to build a branch railroad thereon for general purposes. It is not alleged by them that the proposed road is necessary or to be used as an appurtenance to the land allotted to the parties from whom they derive title, but they aver that their branching powers are not appurtenant to that land, nor limited to its needs and uses. It seems clear to us, from the facts found by the learned master, that the purpose of the parties to the partition was to allow the owners of the coal lot facilities for removing and marketing the coal upon it, and that the provisions in the decree relating to railroads were inserted with this object in view, and are inoperative when it is accomplished. The character of the road then in use, and the number and location of the branches authorized, are in harmony with this conclusion, and in clear conflict with the theory now for the first time advanced

by the appellants.  A partition of the lands they had inherited from their ancestor was the subject before the parties, and the decree was moulded by their agreement, so as to provide for the convenient and profitable use of the purparts by their respective owners.  For nearly fifty years the parties and their successors in title have occupied and used the property in conformity with this construction of the decree.  It is a construction which gives effect to the obvious intention of the parties, and is consistent with the terms of the grant when read in the light of the circumstances and conditions affecting the subject of it.  We think the learned master has fully vindicated his conclusions by the reasoning and authorities on which his report rests.

> Decree affirmed and appeal dismissed, at the costs of the appellants.